WILKINSON, Circuit Judge,
concurring:
I agree fully with the majority’s reasons for denying Blakely’s application to proceed IFP, namely that at least three of his prior actions constitute strikes because they were dismissed at summary judgment with language stating that they were “friv *619 olous, malicious, or fail[ed] to state a claim.” I write separately simply to observe that there is another ground on which Blakely’s IFP application should be denied — one that would hew to the clearly expressed intent of Congress in § 1915. As the majority properly notes, see maj. op. at 612, regardless of whether Blakely’s application for IFP status must be denied by virtue of the mandatory three-strikes rule prescribed in § 1915(g), we possess ample discretion to deny his request under the residual authority conferred upon courts by § 1915(a). Notwithstanding the efforts of the dissent to sow differences between the majority and concurring opinions, the concurrence stands firmly with the majority. Both opinions, moreover, recognize that § 1915(g) and § 1915(a) serve distinct but complementary functions. See maj. op. at 612. Here the discretionary denial inquiry cuts the Gordian Knot — and in doing so, protects the federal courts from the most abusive litigants. As a review of Blakely’s extensive litigation history makes plain, this is a paradigm example of the type of case in which the discretionary denial of an IFP application would be appropriate.
I.
As demonstrated by the differing views of my colleagues in this case, reasonable people can disagree on the question of whether Congress intended that the summary judgments issued against Mr. Blakely should count as strikes under 28 U.S.C. § 1915(g). I am persuaded that Judge Wynn’s fíne opinion for the court provides the correct answer to that question. But the debate has focused primarily on just the first of two steps that exist in Congress’s well-crafted scheme for determining whether to permit a prisoner to proceed in forma pauperis. In my view, the second step is as important as the first.
To explain, when a federal court receives an IFP application from a prisoner who has a track record of filing multiple unsuccessful actions in federal court, 28 U.S.C. § 1915 offers two paths of inquiry for determining whether the prisoner’s application should be denied as a consequence of his prior litigation conduct. The first inquiry asks whether the application must be rejected under the three-strikes provision contained in § 1915(g). Phrased as a limitation on the rights of prisoners, § 1915(g) provides that “in no event shall a prisoner” be entitled to IFP status in his action or appeal if “on 3 or more prior occasions” he has “brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim.” The provision thus creates a mandatory-denial baseline for IFP applications: if a prisoner has three strikes, he is categorically precluded from proceeding IFP (absent a showing of imminent danger of serious physical injury). See maj. op. at 610; see also 3 Michael B. Mushlin, Rights of Prisoners § 17:34 (4th ed.2012).
If a prisoner has not accumulated three qualifying strikes, courts may proceed to a second inquiry through which they possess the power to deny IFP filing status at their own discretion. To that end, the in forma pauperis statute provides that “any court of the United States may authorize” a prisoner to proceed IFP; it does not say that a court must do so. 28 U.S.C. § 1915(a)(1) (emphasis added). Notably, the Supreme Court relied on the statute’s use of the word “may” to hold in In re McDonald that it was under no obligation to award IFP filing status to a prisoner with a history of abusive litigation conduct. 489 U.S. 180, 183-84, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (per curiam). The Court reasoned instead that it possessed the authority to deny IFP status “in the interests of justice.” Id. at 184, 109 S.Ct. 993; see also In re Sindram, 498 U.S. 177, 180, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991) *620 (per curiam) (noting that “the Court has a duty to deny in forma pauperis status to those individuals who have abused the system”). And when Congress amended the law some seven years after McDonald to impose the mandatory three-strikes limitation on prisoners’ IFP privileges, it left untouched the word “may” in § 1915(a)— implicitly ratifying the Court’s recognition of the discretionary power to deny IFP applications.
Unsurprisingly, then, the authority of courts to issue discretionary IFP denials continues to enjoy wide acceptance. For example, the D.C. Circuit relied on its discretionary authority to deny IFP status to a prisoner in Butler v. Department of Justice, even though the prisoner in that case had not run afoul of the mandatory three-strikes rule. 492 F.3d 440, 444-45 (D.C.Cir.2007). In doing so, the court echoed the Supreme Court’s reasoning in McDonald, explaining that its “discretionary authority to deny IFP status.to prisoners who have abused the privilege” derived from § 1915(a) itself, which provides just that a court “may” authorize a prisoner to proceed IFP. Id. Still more recently, in May 2013, the Supreme Court issued a discretionary denial of IFP status in Car-dona v. Thomas, explaining that it would not accept “any further petitions in noncriminal matters from” Cardona without up-front payment of the docketing fee because he had “repeatedly abused this Court’s process.” — U.S. -, 133 S.Ct. 2404, 185 L.Ed.2d 1102 (2013) (per cu-riam).
II.
In deciding whether to exercise their discretion to deny a request for IFP filing status, courts may consider the “number, content, frequency,- and disposition of the [prisoner’s] previous filings.” Butler, 492 F.3d at 445; see also, e.g., In re Anderson, 511 U.S. 364, 365, 114 S.Ct. 1606, 128 L.Ed.2d 332 (1994) (per curiam) (denying petitioner’s request to proceed in forma pauperis where he had filed 22 petitions and motions over three years, none of which were successful, and several of which were repetitive and “patently frivolous”). Applying that standard here, Blakely’s profligate filing history surely warrants denial of his IFP application.
With respect to the number and frequency of his filings, Blakely does not dispute that he filed eight actions in federal district court in South Carolina during the 1998 calendar year alone and that he filed a ninth action in the same court in 2000. All nine of these cases were disposed of by May 2000. Three years later, this court issued an order in Blakely v. South Carolina Department of Corrections, denying his application to proceed IFP in that appeal on the ground that he had violated § 1915(g)’s three strikes rule. No. 03-6765 (4th Cir. June 20, 2003). That 2003 denial of his IFP request precipitated a period of repose from Blakely’s onslaught of federal court filings, as Blakely avers that until 2011, he “waited over 7 years to file anything in federal court.” J.A. at 14.
It seems, however, that Blakely did not stop filing lawsuits altogether in the intervening timeframe. Appellees explain that he instead began filing suits in state court, apparently commencing some 26 actions in the Richland County South Carolina Court of Common Pleas alone. Appellees’ Brief at 5. While Blakely correctly points out that records of these various state court filings are not formally included in the joint appendix to this case, see Appellant’s Reply Brief at 25, he nowhere denies that he did in fact file a multitude of prison actions in state court after our 2003 denial of his IFP ■ privileges. Blakely also contends that these state court filings should not be considered at all for purposes of our discretionary inquiry since the IFP statute *621 is concerned principally with abuse of the federal court system. See id. But even if his decision to subject the state courts to a torrent of litigation is to somehow be considered a mark in his favor, that choice does not compel us to blind ourselves to his ongoing pattern of litigation conduct.
More importantly, it turns out that Blakely’s decision to change course and sue in state court was merely a temporary detour. For Blakely has recently resumed filing cases in federal court with gusto: in 2012 alone, he filed nine additional actions in South Carolina district court. Blakely v. Andrews, No. 5:12-cv-03004-MGL (D.S.C. filed Oct. 18, 2012); Blakely v. Cartledge, No. 5:12-cv-02649-MGL-KDW (D.S.C. filed Sept. 14, 2012); Blakely v. Greenville Cnty., No. 6:12-cv-02587-MGL (D.S.C. filed Sept: 7, 2012); Blakely v. Moore, No. 5:12-cv-02270-MGL (D.S.C. filed Aug. 9, 2012); Blakely v. Thompson, No. 5:12-cv-02150-MGL (D.S.C. filed Aug. 1, 2012); Blakely v. Hallman, No. 5:12-cv-01289-MGL (D.S.C. filed May 17, 2012); Blakely v. Moore, No. 5:12-cv-01214-RMG (D.S.C. filed May 8, 2012); Blakely v. Thompson, No. 5:12-cv-00972-MBS (D.S.C. filed Apr. 5, 2012); Blakely v. McCall, No. 5:12-cv-00410-RMG (D.S.C. filed Feb. 13, 2012). Thus, even without considering any of Blakely’s various state court actions, it is beyond dispute that he is a prolific filer in terms of both number and frequency, having initiated at least seventeen cases in a single federal district court during just the 1998 and 2012 calendar years.
Blakely suggests that because appellees did not themselves provide the above case information, “it is not clear if the[ ] [cases] even involve the same individual.” Appellant’s Reply Br. at 25. However, apart from his conclusory assertion that appel-lees have failed to prove that these cases were filed by him (as opposed to being filed by a different prisoner sharing the same name and middle initial in the same district court), Blakely has never actually claimed that he did not file the above actions in 2012.
The third factor for our consideration, the disposition of his previous actions, also militates against Blakely’s IFP application. Blakely does not dispute that, of the many federal actions he filed in 1998, every one of them terminated in an adverse disposition. He also does not contend that he has prevailed in any of his more recently filed federal actions. In short, Blakely has failed to point to a single case of his (filed in either state or federal court) that has resulted in a final ruling in his favor.
This makes sense when one considers the content of his claims, the final factor that guides our discretionary inquiry. While Blakely does not challenge the fact that all of his cases have ultimately been deemed without merit, several of his cases were especially lacking. For example, in two of his 1998 federal court actions, Blakely asked the district court to enter an order compelling the defendants (the State of South Carolina and the Greenville County Judicial System) to acquit him of all pending charges against him in state court. See Blakely v. Greenville Cnty. Judicial Sys., No. 0:98-cv-02978-MBS (D.S.C. Mar. 25, 1999) (at J.A. 227-231); Blakely v. Greenville Cnty. Judicial Sys., No. 0:98-cv-02313-WBT (D.S.C. Sept. 1, 1998) (at J.A. 190-201). In one of the cases, the apparent basis of his request was that the presiding judge violated the Double Jeopardy Clause by allowing a homicide detective to testify against him at a preliminary hearing and then again later on in the proceedings. See J.A. at 192.
Furthermore, as has been discussed extensively, more than three of Blakely’s actions were dismissed at summary judgment with language stating that they were “frivolous, malicious, or fail[ed] to state a *622 claim upon which relief may be granted.” Regardless of whether this language converted these dismissals into strikes under § 1915(g) (and I agree with the majority that it did), our court is free to consider the language as a negative comment on the substance of Blakely’s claims in deciding whether to deny in our discretion his IFP request.
In sum, all four factors — the number, frequency, disposition, and content of his previous filings — cut against Blakely’s IFP application. By way of comparison, his track record is at least as egregious as that of the prisoner in Butler, whose application the D.C. Circuit found to be an easy case for discretionary denial. See 492 F.3d at 446 (noting that Butler had filed ten appeals in the D.C. Circuit, eight of which were in a four-year period, as well as some fifteen other listed actions). Thus, because Blakely is a serial filer who has taken undue advantage of IFP status, it would be a proper exercise of our discretion to require Blakely to shoulder up front the cost of his filing fees before proceeding in this court.
III.
My fine colleague in dissent disputes none of Blakely’s copious litigation history. The dissent takes no issue with the fact that Blakely has filed dozens of lawsuits in state and federal court since 1998, twice filing almost ten meritless lawsuits in a single calendar year. This pattern of abuse is scarcely mentioned by the dissent. It appears of little moment, something Congress would not wish considered and courts may largely disregard.
Notwithstanding the full extent of Blakely’s prior abuse of IFP status, the dissent proceeds to add a limitation to § 1915(a)(1) that is nowhere in the statutory text. According to the dissent, courts may deny IFP status only if the criteria under § 1915(g) are met. See dissenting op. at 628-29 (delineating § 1915(g) as the sole operative rule). Not surprisingly, this view of the statute simply fails to accord with the' plain meaning of § 1915(a)(1), which afforded courts the discretionary authority to authorize IFP status, but nowhere limits that discretion in the manner the dissent now wishes to prescribe. The statute the dissent wishes Congress had written would have been easy enough to draft, but the limiting reference to subsection (g) is, alas, nowhere to be found.
The dissent likewise overlooks the basic structure of the statute. It reads § 1915(g) to completely swallow up the separate provision in § 1915(a)(1). See dissenting op. at 628-29. This ignores the fact that we are expected to give effect to all provisions in a statute, not just some. It also overlooks the distinctive and complementary roles played by § 1915(a)(1) and § 1915(g), the first of which is a conferral of authority upon courts, and the latter of which is a limitation upon repetitive lawsuits by prisoner litigants. The provisions function in tandem, and they manifestly foreclose the view offered by the dissent — namely that in enacting a restriction on litigious conduct in one provision, Congress somehow meant to broadly expand the possibilities for this precise conduct in another.
The dissent’s position is finally not only at odds with the language and structure of the statute, but-with its purpose as well. It would incentivize prisoners with abusive litigation histories to continue their litigious pattern, for under the dissent’s view, petitioner’s extensive litigation history would count for absolutely nothing in the discretionary calculus, ■ the very scenario Congress intended to forestall. To support its view, the dissent attempts to cabin Supreme Court cases that stand without question for the principle that courts are not obliged to step aside and watch their *623 processes subject to the disregard that occurred with such incessant frequency as here. See In re Sindram, 498 U.S. 177, 180, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991) (per curiam) (noting that “[T]he Court has a duty to deny informa pawperis status to those individuals who have abused the system.”); In re McDonald, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (“A part of the Court’s responsibility is to see that [IFP] resources are allocated in a way that promotes the interests of justice.”). These statements too would be undermined were the dissent’s view to prevail.*
IV.
Federal courts have the obligation to reserve their attentions for those litigants who have not previously abused the system. Congress too has an interest in not having the resources of a coordinate branch misused and squandered — an interest expressed in the complementary provisions of § 1915(a) and (g). If this litigant were granted IFP status, I have a difficult time envisioning one who would not be. The majority rightly notes that in § 1915(a) “Congress vested in courts the authority to decide whether to grant in forma pauperis status,” maj. op. at 612, and I am happy to concur in its thoughtful opinion.
Judges Niemeyer, Keenan, and Diaz have kindly asked me to show them as joining in this opinion.

 The remaining points in the dissenting opinion can be readily addressed. While the dissent complains that a multi-factor test for the exercise of discretionary authority is “amorphous,” dissenting op. at 629-30, it is not up to us to say that a general grant of discretionary authority, quite common to the law, is on that account impermissible. The dissent’s further complaint that IFP status has been denied on the basis of previous abuse "regardless of the merit of his current case,” id. at 630, overlooks the fact that prior abuse is not infrequently a basis for some present loss of privilege, in this case without the need to draw courts into the merits of a prolific litigator’s every latest offering.